UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

CHRISTOPHER STEVEN BOWEN,

       Petitioner,                                     Case No. 1:07-CV-1204
                                                      (Criminal Case No. 1:03-CR-79)

v.

                                                      HON. GORDON J. QUIST

UNITED STATES OF AMERICA,

       Respondent.
_____/

**OPINION**

**I.  Introduction**

        The Court has before it Christopher Steven Bowen's ("Petitioner") Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody and Petitioner's Motion for a Free Court Reporter's Transcript.  Promptly after the filing of a § 2255 motion, the Court must undertake a preliminary review of the motion to determine whether it plainly appears from the motion, the attached exhibits, and the record of prior proceedings that Petitioner is not entitled to relief in the district court.  Rule 4, Rules Governing § 2255 Cases.  If so, the Court shall make an order for its summary dismissal.  *Id.*  A dismissal under Rule 4 includes those petitions that raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false.  *See Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999) (applying Rule 4 to petition filed under 28 U.S.C. § 2254).  After undertaking the review required by Rule 4, the Court concludes that Petitioner is not entitled to relief under § 2255.  Additionally, for the reasons discussed below, Petitioner's transcript request will be denied.

## II.  Procedural History

Petitioner was tried before a jury and found guilty of conspiracy to distribute more than 50 grams of a mixture or substance containing cocaine base in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A)(iii).  On May 26, 2005, the Court sentenced Petitioner to imprisonment for life without the possibility of release.  He appealed his conviction and sentence.  The United States Court of Appeals for the Sixth Circuit affirmed both on September 8, 2006.  *United States v. Bowen,* 194 F. App'x. 393 (6th Cir. 2006).  On November 29, 2007, Petitioner timely filed this motion under 28 U.S.C. § 2255.  On December 17, 2007, Petitioner filed his motion for a free transcript.

## III.  Ineffective Assistance of Counsel

Petitioner claims that he was denied effective assistance of counsel.  Petitioner cannot establish ineffective assistance of counsel unless he can show two things.  First, Petitioner must establish deficient performance by counsel.  *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984).  This requires counsel to make errors so serious that he or she was not functioning as "counsel" guaranteed the defendant by the Sixth Amendment.  *Id.*, 104 S.Ct. at 2064.  Second, Petitioner must show that counsel's deficient performance prejudiced Petitioner.  *Id.*, 104 S.Ct. at 2064.  To establish prejudice, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694, 104 S.Ct. at 2068.  If Petitioner cannot prove both deficiency and prejudice, his ineffective assistance claim fails.  *Id.* at 697, 104 S.Ct. at 2069.  Petitioner alleges several errors by counsel that deprived him of effective assistance of counsel.  The Court will discuss each in turn.

### A.  Reference to Petitioner's Parole Status

Petitioner first claims that counsel was ineffective for introducing evidence that Petitioner was on parole at the time of the charged offense.  At trial, counsel called Petitioner's former parole

2

officer to testify. According to Petitioner, counsel sought to elicit testimony that Petitioner was not living at a specific residence where drug trafficking evidence was found. Petitioner argues that counsel's strategy had the prejudicial effect of alerting the jury that Petitioner was a convicted felon on parole.

"'In order to avoid second-guessing trial counsel's strategic decisions,' review of counsel's performance is highly deferential." *Girts v. Yanai*, 501 F.3d 743, 756 (6th Cir. 2007) (quoting *United States v. Foreman*, 323 F.3d 498, 503 (6th Cir. 2003)). When determining whether counsel's performance was deficient, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Girts*, 501 F.3d at 756 (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065). Petitioner has not overcome this presumption.

Petitioner and his counsel decided that the benefits of proving Petitioner was not living at the house where evidence of illegal activity was found outweighed the harm of informing the jury of Petitioner's parole status. This was a strategic decision made by Petitioner and his counsel that made sense at the time. The Court will not second-guess this strategy under the guise of an ineffective assistance of counsel claim. Moreover, any possible prejudice against Petitioner was limited by the Court's instruction to the jury as follows:

> THE COURT: Members of the Jury, you've heard that Mr. Bowen, the defendant, was in prison and was on parole. Now the thing about the United States is that a person can only be tried for the crime with which he's charged. He has served his time and performed his sentence for that other offense. And the only relevance of that testimony is to show you where he was at certain points in time. You cannot convict someone of this crime because they may have committed another crime, whatever it might have been, sometime in the past. So the only relevance of that is to show the circumstance under which a certain conversation allegedly occurred and to show certain time frames that the government is trying to prove in this particular case. So you have to limit your analysis of the defendant's guilt in this case, whether he's guilty or not, to determine in your verdict the particular facts

relevant to the particular charge that we have here.  He's not on trial for any kind of character or anything that he did in the past.

(Trial Tr. at 67-68.)

Therefore, counsel's conduct in eliciting this testimony was not deficient within the meaning of the Sixth Amendment.

### B. Exclusion of Defense Witness

Petitioner's next allegation of error concerns his attempt at trial to introduce testimony of Oreanda Hall, a co-conspirator who pleaded guilty.  Both Hall's counsel and the government noted that Hall risked jeopardizing his plea agreement were he to testify in Petitioner's defense.  (Trial Tr. at 286, 288.)  The Court excluded Hall from testifying after he indicated that he would invoke his Fifth Amendment privilege against self incrimination.  (*Id.* at 289, 294.)  Petitioner claims that counsel was ineffective for failing to object to the Court's ruling excluding Hall from testifying.

"As a threshold matter, in a trial of any size, numerous potentially objectionable events occur.  'The Constitution does not insure that defense counsel will recognize and raise every conceivable constitutional claim.'"  *Lundgren v. Mitchell*, 440 F.3d 754, 772 (6th Cir. 2006) (quoting *Engle v. Isaac*, 456 U.S. 107, 134, 102 S.Ct. 1558 (1982)).  "[A]ny single failure to object usually cannot be said to have been error unless the evidence sought is so prejudicial to a client that failure to object essentially defaults the case to the state.  Otherwise, defense counsel must so consistently fail to use objections, despite numerous and clear reasons for doing so, that counsel's failure cannot reasonably have been said to have been part of a trial strategy or tactical choice."  *Lundgren*, 440 F.3d at 754 (citing *Hodge v. Hurley*, 426 F.3d 368, 376 (6th Cir. 2005)).

First of all, any failure of Petitioner's counsel to object to the exclusion of Hall's testimony did not make any difference at trial.  The point is that Petitioner's counsel did attempt to call Hall as a witness, and it was Hall's objection to testifying that was sustained.  No further argument or

objection by Petitioner's attorney would have been necessary at trial or to preserve the issue for appeal.

Second, the Court based its ruling primarily on *Mitchell v. United States*, 526 U.S. 314, 119 S.Ct. 1307 (1999), and *Kincy v. Dretke*, 92 F. App'x. 87 (5th Cir. 2004). In *Mitchell*, the Supreme Court stated, "It is true, as a general rule, that where there can be no further incrimination, there is no basis for the assertion of the privilege [against self incrimination]." *Mitchell*, 526 U.S. at 326, 119 S.Ct. at 1314. The Supreme Court then held, "Where the sentence has not yet been imposed a defendant may have a legitimate fear of adverse consequences from further testimony." *Id.*, 119 S.Ct. at 1314. In *Kincy*, the Fifth Circuit recognized that a co-defendant who pleads guilty pursuant to a plea agreement retains his Fifth Amendment rights prior to being sentenced, and thus cannot be compelled to testify. *Kincy*, 92 F. App'x. at 91; *see also United States v. Boothe*, 335 F.3d 522, 527 (6th Cir. 2003). In light of this precedent, the Court, after thoroughly examining Hall's plea agreement, determined that Hall's testimony could put him at risk of prosecution for crimes not encompassed by his plea agreement. (Trial Tr. at 293-294.) The Court underwent a lengthy discussion regarding Hall's Fifth Amendment rights, and there is no indication how an objection by Petitioner's counsel would have changed the Court's analysis. *See also, United States v. Smith*, 245 F.3d 538, 543 (6th Cir. 2001).

The law is clear, "a defendant's right to force a witness to testify must yield to that witness' assertion of this Fifth Amendment privilege against self-incrimination, where it is 'grounded on a reasonable fear of danger of prosecution.'" *United States v. Gaitan-Acevedo*, 148 F.3d 577, 588 (6th Cir. 1998).

Thus, Petitioner cannot base an ineffective assistance of counsel claim on this alleged error.

5

### C. *Reference to Firearms and Killing*

Next, Petitioner claims that counsel was ineffective for failing to object or request a limiting instruction after the government introduced inadmissible, prejudicial evidence. Petitioner points to two specific items of evidence: firearms that were seized from his residence and the residences of two co-conspirators; and testimony that the brother of Petitioner's co-conspirator had been killed (Trial Tr. at 22-23, 42, 89, 96, 134). Petitioner argues that neither was relevant to proving his participation in the conspiracy and that both were unduly prejudicial.

Petitioner's counsel was not deficient in failing to object to the evidence of weapons. The Sixth Circuit has held that evidence of weapons, including firearms, is relevant to proving intent or a conspiracy to distribute drugs. *United States v. Wheaton*, 517 F.3d 350 (6th Cir. 2008); *United States v. Medina*, 992 F.2d 573, 587 (6th Cir. 1993) (evidence of firearms tended to prove existence of drug conspiracy); *see also United States v. Arnott*, 704 F.2d 322, 326 (6th Cir. 1983) (recognizing that firearms are "tools of the trade" in trafficking narcotics). The firearms presented in this case were probative of the drug charges and not unfairly prejudicial. Moreover, the testimony that the brother of Petitioner's co-conspirator had been killed was not prejudicial to Petitioner. Therefore, neither of these alleged errors constitutes deficient performance by Petitioner's counsel.

### D. *Improper Vouching*

Next, Petitioner claims that counsel was ineffective for failing to object to the government's alleged "vouching" of co-defendant witnesses who had entered plea agreements. "'Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the United States Attorney behind that witness.'" *United States v. Martinez*, 253 F.3d 251, 253-54 (6th Cir. 2001). However, no improper vouching occurred in this case because the prosecutor merely informed the jury of the

6

witnesses' plea agreements.  (Trial Tr. at 85, 128.)  This is permissible.  *United States v. Trujillo*, 376 F.3d 593, 607-609 (6th Cir. 2004); *United States v. Tocco*, 200 F.3d 401, 416-417 (6th Cir. 2000).  The prosecutor gave no personal opinions as to the veracity of the witnesses' testimony and thus did not improperly vouch for their credibility.  As a result, Petitioner's counsel was not deficient for failing to object.

### *E.  Flight Evidence*

Lastly, Petitioner claims that counsel was ineffective for failing to object to the government's flight argument.  The government introduced testimony that Petitioner fled to North Carolina upon learning that he had been indicted in this case and argued that such flight tended to prove Petitioner's awareness of his guilt of the crime charged.  Petitioner argues that there was insufficient evidence in the record to establish his flight, and therefore any connection between flight and guilt was improper.

Where evidence of flight has genuine probative value, it is generally admissible as evidence of guilt and juries must determine how much weight should be given to such evidence.  *United States v. Dillon*, 870 F.2d 1125, 1126 (6th Cir. 1989).  The Sixth Circuit has adopted a four-step formulation for determining the probative value of flight evidence.  Flight evidence depends upon the degree of confidence with which inferences can be drawn: "(1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged."  *Dillon*, 870 F.2d at 1127 (quoting *United States v. Myers*, 550 F.2d 1036, 1049 (5th Cir. 1977)).

While Petitioner contends that there was insufficient evidence to characterize his behavior as flight, the record shows otherwise.  Three separate individuals testified to seeing Petitioner in

7

North Carolina after his residence was raided: Paketta Cannon, Curtis Shepard, and Officer Hill. (Trial Tr. at 109, 118, 179.) Petitioner knew there was a warrant for his arrest. (*Id.* at 109.) Cannon and Officer Hill both testified that Petitioner operated under the alias "Robert" and used falsified North Carolina identification. (*Id.* at 110, 120). In light of this evidence, testimony of Petitioner's flight was properly admitted, and Petitioner's counsel was not deficient for failing to object.

### *F. Cumulative Effect*

Even were the Court to find merit in any of Petitioner's allegations of error, he has not shown that the cumulative effect of any potential errors prejudiced him. When determining whether Petitioner has established prejudice, the Court must examine "the combined effect of all acts of counsel found to be constitutionally deficient, in light of the totality of the evidence in the case." *Lundgren*, 440 F.3d at 770 (citing *Blackburn v. Foltz*, 828 F.2d 1177, 1186 (6th Cir. 1987)). "[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland*, 466 U.S. at 695.

In the present case, there was substantial evidence of Petitioner's guilt. Officer Beauchamp testified that he seized a Pyrex glass measuring cup, two digital scales, and plastic baggies–items associated with crack manufacturing and dealing–from a house in Kalamazoo, Michigan. (Trial Tr. at 13-14.) Officer Habel testified that he seized a cable bill in Petitioner's name from that house, and Donald Gaddie testified that Petitioner lived at the house and that he saw Petitioner "cooking" and selling crack from the house. (*Id.* at 27, 51, 53.) Additionally, Gaddie testified that Petitioner purchased crack from Hall. (*Id.* at 66.) Furthermore, Curtis Shepard testified that Petitioner helped arrange, fund, and execute cocaine purchases from Hall, while living at this residence. (*Id.* at 166-167.) Petitioner would subsequently manufacture the cocaine into crack, weigh and package it, and sell it to customers. (*Id.* at 168, 170-174.) Therefore, even if counsel was deficient in failing to

object to certain evidence, the Court cannot conclude that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.

### IV. Petitioner's Motion for a Free Court Reporter's Transcript

Defendant had a free transcript of his trial prepared for his appeal. After the Sixth Circuit affirmed Petitioner's conviction and sentence, he moved this Court for a second free copy of portions of his trial transcript. The Court denied Petitioner's motion, ruling that Petitioner had not shown any "special circumstances" that would entitle him to a free transcript under 28 U.S.C. § 753(f). Petitioner then filed a Mandamus Petition in the Sixth Circuit, which the Sixth Circuit denied because Petitioner had yet to file a § 2255 motion. *In re Christopher Steven Bowen*, No. 07-2270 (6th Cir. Dec. 6, 2007).

Petitioner has again moved for a free copy of the closing argument and jury instruction transcripts. In support of his motion, Petitioner contends that these transcripts are needed to develop further his existing § 2255 motion. Fees for transcripts furnished in proceedings brought under § 2255 will be paid by the United States only if "the trial judge or a circuit judge certifies that the suit or appeal is not frivolous and that the transcript is needed to decide the issue presented by the suit or appeal." 28 U.S.C. § 753(f). In this case, this Court, on its own, has looked at relevant portions of the transcript. The Court has concluded that Petitioner's § 2255 motion should be summarily dismissed because it raises "legally frivolous claims." *Carson v. Burke*, 178 F.3d at 436-37.

For all of these reasons, Petitioner is not entitled to a second free copy of the transcripts he seeks.

### V. No Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a

"substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2255 Cases is a determination that the § 2255 motion, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10, 15 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490, 492 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of the State of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473, 120 S.Ct. 1595 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, 120 S.Ct. at 1604, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." The Court finds that reasonable jurists could not find that this Court's dismissal of each of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

## VI. Conclusion

For the reasons set forth above, Petitioner's § 2255 Motion (docket no. 1) will be DISMISSED pursuant to Rule 4 of the Rules Governing § 2255 Cases. In addition, a certificate of appealability will be DENIED as to each issue raised by Petitioner because he has failed to make a "substantial showing of a denial of a constitutional right."

Furthermore, Petitioner's Motion for a Free Court Reporter's Transcript (docket no. 4) will be DENIED.

A separate Order will issue.


Dated: April 3, 2008                                               /s/ Gordon J. Quist
                                                                                     GORDON J. QUIST
                                                           UNITED STATES DISTRICT JUDGE